**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **BRIDGESTONE BRANDS, LLC**, a Delaware limited liability company, 200 4th Avenue S Nashville, Tennessee 37201<br><br>and<br><br>**BRIDGESTONE AMERICAS TIRE OPERATIONS, LLC**, a Delaware limited liability company, 200 4th Avenue S Nashville, Tennessee 37201<br><br>       Plaintiffs,<br><br>v.<br><br>**PHILADELPHIA MOTORWORLD AUTO SERVICE & TIRE CENTER, INC.**, a Pennsylvania corporation, 7446 Ogontz Ave. Philadelphia, Pennsylvania 19138-1324<br><br>and<br><br>**SHERMAN MCLEOD**, an individual, 2754 N. 45th St. Philadelphia, Pennsylvania 19131-1517<br><br>and<br><br>**SHAWN MCLEOD**, an individual, 3143 N. 28th St. Philadelphia, Pennsylvania 19132-1218<br><br>      Defendants. | **COMPLAINT FOR TRADEMARK INFRINGEMENT, TRADEMARK DILUTION, AND UNFAIR COMPETITION**<br><br>Case No. _____<br><br>**Jury Trial Demanded** |

Plaintiffs Bridgestone Brands, LLC and Bridgestone Americas Tire Operations, LLC, (collectively "Firestone" or "Plaintiffs"), by their undersigned attorneys, allege as follows, upon

actual knowledge with respect to themselves and their own acts, and upon information and belief as to all other matters.

## NATURE OF THE ACTION

1.      This is an action for trademark infringement, trademark dilution, and unfair competition under federal and state law.

## THE PARTIES

2.      Plaintiffs are Delaware limited liability companies with a principal place of business at 200 4th Avenue S, Nashville, Tennessee 37201.

3.      Upon information and belief, Defendant Philadelphia Motorworld Auto Service & Tire Center, Inc. ("Philadelphia Motorworld") is a Pennsylvania corporation with its principal place of business at 7446 Ogontz Ave., Philadelphia, Pennsylvania 19138-1324.

4.      Upon information and belief, Defendant Sherman McLeod is an individual residing at 2754 N. 45th St., Philadelphia, Pennsylvania 19131-1517, and is President of Philadelphia Motorworld.

5.      Upon information and belief, Defendant Shawn McLeod is an individual residing at 3143 N. 28th St., Philadelphia, Pennsylvania 19132-1218, and is Vice President of Philadelphia Motorworld. (Philadelphia Motorworld, Sherman McLeod, and Shawn McLeod will be collectively referred to herein as the "Defendants").

## JURISDICTION AND VENUE

6.      This action arises under the federal Lanham (Trademark) Act, 15 U.S.C. §§ 1051, *et seq.*, and under the related law of the state of Pennsylvania.  This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a) and (b).  This Court has supplemental jurisdiction over Firestone's state law claims pursuant to

28 U.S.C. § 1367 because those claims are substantially related to Firestone's federal Lanham Act claims.

7.      This Court has personal jurisdiction over Defendants, and venue is proper in this District pursuant to 28 U.S.C. § 1391, because Firestone is being harmed in this District, Defendants reside in this District, Defendants are doing business in this District, and Defendants are using the infringing and dilutive FIRESTONE name and mark in this District.

### FIRESTONE AND THE FAMOUS FIRESTONE NAME AND TRADEMARKS

8.      Firestone and its related and affiliated companies comprise the world's largest tire and rubber company.  Their products are sold in over 150 nations and territories around the world.

9.      Firestone, by and through its related companies and licensees, has continuously used the FIRESTONE name and trademark for over a century, dating back to when entrepreneur and innovator Harvey S. Firestone founded Bridgestone's predecessor-in-interest, The Firestone Tire and Rubber Company.  By 1900, with 12 employees and a single production facility in Akron, Ohio, The Firestone Tire and Rubber Company produced its first tire.  FIRESTONE tires quickly gained a reputation for quality and performance; they were chosen by Henry Ford for the first mass-produced cars in America and, shortly thereafter, drove to victory in the very first Indianapolis 500 car race.

10.     In the decades that followed, The Firestone Tire and Rubber Company continued to expand its FIRESTONE-branded product offerings, grow in size, and enjoy tremendous commercial success.

11.     Today, Firestone develops, manufactures, and markets FIRESTONE-branded tires for virtually every type of land vehicle, including tires for passenger, light truck, commercial

truck and bus, agriculture, and off-road vehicles. Firestone's tires have one of the largest market shares for passenger vehicles and have been offered as original equipment on several different brands of vehicles.

12.    Firestone has continuously used the FIRESTONE trademark and name in commerce in the United States since at least as early as 1900.

13.    In addition to its tires, Firestone has offered retail-store services under its FIRESTONE mark since at least as early as 1926 through its related company Bridgestone Retail Operations, LLC. FIRESTONE branded retail stores provide a full assortment of tires and automobile maintenance and repair services. Over the years, FIRESTONE brand automotive maintenance and repair businesses have grown to approximately 1,500 company-owned stores nationwide. Retail stores are located throughout Pennsylvania, including a location just over six miles from Defendants' store location in Philadelphia, Pennsylvania.

14.    Firestone's authorized retail stores prominently feature approved signage, displays, print materials, and other marketing and promotional materials bearing the FIRESTONE marks. The following is a representative example of the façade of a FIRESTONE retail store:



15.     Through itself and licensees, Firestone has used the FIRESTONE marks in connection with various services and products, including tire and automotive products, (e.g., road-safety kits), services, accessories, and related merchandise and goods (e.g., clothing, video games, models, and toys).

16.     Firestone owns the following valid and subsisting U.S. trademark registrations for its FIRESTONE marks (among others):

| Mark | Goods/Services | Reg. No. | Reg. Date |
|---|---|---|---|
| *Firestone* | Rubber tires | 0140804 | 03/29/1921 |
| *Firestone* | Retail tire and automotive store services | 1178631 | 11/17/1981 |
| *Firestone* | Vehicle tires and inner tubes therefor | 1387468 | 03/25/1986 |
| FIRESTONE | Vehicle tires and inner tubes therefor | 2464005 | 06/26/2001 |
| *Firestone* | Automotive repair and maintenance | 3173847 | 11/21/2006 |
| *Firestone* | Retail tire store services | 3173840 | 11/21/2006 |

| FIRESTONE COMPLETE AUTO CARE | Retail tire and automobile parts and accessories store; automotive services, namely, automobile repair and maintenance | 3299861 | 09/25/2007 |
|---|---|---|---|

The above marks and additional FIRESTONE marks and registrations are listed in

**Exhibit 1**.  Firestone's registrations listed above are incontestable.

17.      Firestone, through its related companies, uses and/or has used the registered

FIRESTONE marks in the United States for the products and services identified in Paragraphs

15, and for other products and services.

### SALE AND PROMOTION OF
### FIRESTONE PRODUCTS AND SERVICES

18.      In recent years, Firestone has sold billions of dollars of tires branded with the

FIRESTONE marks in the United States through its FIRESTONE retail stores and other outlets.

19.      Firestone's tires have been featured as original equipment on same of the world's

top-selling cars and trucks.

20.      Firestone spends millions of dollars annually advertising, marketing, and

promoting the FIRESTONE marks/names through virtually every type of digital, broadcast, and

print media, including but not limited to print advertisements (e.g., magazines and newspapers),

television and radio commercials, Internet advertising, social media, billboards, brochures,

catalogs, point-of-sale displays, sponsorships, trade shows, apparel, merchandise, and

promotional items.

21.      The FIRESTONE marks/names have further been promoted through Firestone's

sponsorship of a number of high-profile sports and music leagues, associations, and events.  For

example, FIRESTONE is (and/or has been) the Official Tire of the Indy Racing League,

IndyCar, the Indianapolis 500, and Bigfoot Monster Truck Racing Team.  Moreover, Firestone

6

has signed on to be an Olympics partner/sponsor through 2024.  Firestone has also sponsored a number of country music festivals, events, and concerts, including, but not limited to, the CMA Music Festival and the Legends Day Concert held at the Indianapolis Motor Speedway during the Indianapolis 500.

22.     The FIRESTONE marks/names also have been prominently featured and promoted through various highly followed and publicized racing events, including in connection with the Indy 500 race.  From 1920 through 1966, Firestone won every Indy 500 race—a record unmatched by any other tire manufacturer.  The FIRESTONE marks/names appeared prominently on signage and other materials throughout these events.

23.     The FIRESTONE marks/names have also been promoted online through various company websites, popular social-networking websites (including Facebook, Instagram, and Twitter), and advertising placed on third-party websites.

24.     In addition to its own substantial advertising and promotional activities, the FIRESTONE marks/names, products, and sponsored events receive a significant amount of unsolicited media coverage, including on nationally broadcast television programs and in widely circulated publications.

25.     As a result of the distinctive nature and inherent strength of the FIRESTONE marks/names; widespread use, advertising, publicity, and promotion; and billions of dollars of sales, the FIRESTONE marks/names have been well known and famous since long before Defendants began their unlawful acts.

26.     In *Bridgestone/Firestone North American Tire, LLC and BFS Brands, LLC v. Silverstone Berhad*, 2003 TTAB LEXIS 142, 28-29 (TTAB 2003), the Trademark Trial and

Appeal Board of the United States Patent and Trademark Office held that the FIRESTONE mark is famous.

## DEFENDANTS' WRONGFUL ACTS

27.     Upon information and belief, Philadelphia Motorworld was incorporated in June 1997 under the name PHILADELPHIA MOTORWORLD AUTO SERVICE & TIRE CENTER, INC.  Sometime thereafter, upon information and belief, Defendants began doing business and holding themselves out to the public under the mark FIRESTONE PHILADELPHIA MOTOR WORLD.

28.     Defendants were previously authorized to use the FIRESTONE trademark and logo, but are no longer authorized to do so.

29.     On September 11, 1997, Defendants entered into the Authorized Dealer Agreement ("Dealer Agreement"), attached as **Exhibit 2**, with Bridgestone Americas Tire Operations, LLC (previously named Bridgestone/Firestone, Inc.) authorizing Defendants to use certain Firestone trademarks in connection with the store located at 7446 Ogontz Avenue, Philadelphia, Pennsylvania 19138 (the "Ogontz Avenue Store").  The Dealer Agreement included a non-transferable, non-exclusive license to use the FIRESTONE mark for certain advertising and promotional materials displayed and/or distributed at the Ogontz Avenue Store, for so long as Defendants remained an affiliated dealer under the agreement.

30.     The Dealer Agreement provides, among other things, that "Upon termination of this Agreement, you shall immediately and without delay cease and desist from holding yourself out to the public in any fashion or manner as an Affiliated Dealer, shall thereupon permanently remove and cease to utilize the trademarks and associated designs covered by the license granted herein and, at the option of BFS, return to BFS, all signs, displays, labels, wrapping and

8

packaging material, stationery, and advertising then in your possession bearing the mark or associated designs."

31.    In addition to the Dealer Agreement, Defendants entered into a separate Sign Bailment Agreement, attached as **Exhibit 3**, under which Defendants agreed to "immediately upon request of BFS or upon termination of this Agreement, shall cease to use and remove all the Signs) and marks, and all other BFS identification, from the location and deliver the same to such location as may be designated by BFS."

32.    On September 15, 1999, Firestone terminated the Authorized Dealer Agreement. A copy of the written termination notice to Defendants is attached as **Exhibit 4**.

33.    Defendants are no longer licensed or otherwise authorized by Firestone to use the FIRESTONE name or mark in any way.  Defendants, however, failed to remove the FIRESTONE signage from the Ogontz Avenue Store as required by the Dealer Agreement. Instead, Defendants have used the FIRESTONE mark in signage to unlawfully hold themselves out as a FIRESTONE store and to capitalize on the valuable and favorable reputation and goodwill associated with Firestone and its names and marks.  For example, Defendants use the FIRESTONE PHILADELPHIA MOTOR WORLD name and mark on signage at their automotive shop.  This signage includes the stylized FIRESTONE logo mark, as seen in the following photograph:



34.     Firestone contacted the Defendants in September 2016 to request that they cease

using the FIRESTONE mark and signage and transition to a new name and mark, but Defendants

refused.  A copy of the letter is attached as **Exhibit 5**.  The Defendants therefore had actual

notice that they were and are using a mark likely to cause confusion with, and that is likely to

dilute and/or is diluting, Firestone's FIRESTONE marks.

35.     The Defendants also had constructive notice of the FIRESTONE marks prior to

their use of FIRESTONE PHILADELPHIA MOTOR WORLD, based on Firestone's U.S.

trademark registrations, including those listed in Exhibit 1.

36.    Since September 2016, Firestone has repeatedly attempted to persuade the
Defendants to take down the stylized FIRESTONE signage and cease all use of the FIRESTONE
marks, to no avail.

37.    The Defendants continue to use (and have not agreed to stop using) the
FIRESTONE name and mark in connection with their business, nor have they removed the
stylized FIRESTONE signage.

## INJURY TO THE PUBLIC AND BRIDGESTONE

38.    Defendants' unauthorized use of the FIRESTONE name and mark, including as
part of Defendants' shop name displayed as FIRESTONE PHILADELPHIA MOTOR WORLD,
has led to actual consumer confusion, further injuring Plaintiff.

39.    Indeed, in January 2017, Plaintiffs' affiliate, Bridgestone Retail Operations, LLC
(BSRO), was sued for a slip-and-fall accident that occurred at Defendants' property.  As a result
of Defendants' unauthorized display of the FIRESTONE sign, the complaining party in that case
erroneously assumed that BSRO was affiliated with and/or operated Defendants' shop.
Although BSRO was eventually dismissed from the lawsuit, this occurred only after BSRO
incurred substantial legal fees.  Moreover, the incident diminished the goodwill in the
FIRESTONE brand as a result of being erroneously associated with this incident and any related
consumer injury or suffering.

40.    More generally, Defendants' continued unauthorized use of the FIRESTONE
name and mark, including as part of Defendants' shop name displayed as FIRESTONE
PHILADELPHIA MOTOR WORLD, is likely to continue to cause confusion, mistake, and
deception as to the source or origin of the Defendants' services and products, and is likely to
suggest a sponsorship, connection, or association between the Defendants, their products and
services, and/or their commercial activities with Firestone.

41.     The Defendants' unauthorized use of the FIRESTONE name and mark as described above is also likely to dilute and/or is diluting the distinctiveness and value of Firestone's famous FIRESTONE marks.

42.     The Defendants' unauthorized use of the FIRESTONE name and mark has damaged and irreparably injured, and, if permitted to continue, will further damage and irreparably injure Firestone, the FIRESTONE name and marks, Firestone's reputation and goodwill, and the public's interest in being free from confusion.

43.     The Defendants have known, and still know, that the use of the FIRESTONE mark, including as part of the displayed name FIRESTONE PHILADELPHIA MOTOR WORLD, is neither permitted nor authorized. As a result, Defendants have acted knowingly, willfully, in reckless disregard of Firestone's rights, and in bad faith.

## FIRST CLAIM FOR RELIEF

## (TRADEMARK INFRINGEMENT UNDER SECTION 32(1) OF THE LANHAM ACT, 15 U.S.C. § 1114(1))

44.     Firestone repeats and realleges each and every allegation set forth in paragraphs 1 through 43 of this Complaint.

45.     Without Firestone's consent, the Defendants used and continue to use in commerce, reproductions, copies, and colorable imitations of Firestone's prior registered FIRESTONE marks in connection with the offering, distribution, and advertising of products and services, which has caused actual confusion and is likely to continue to cause confusion, or to cause mistake, or to deceive, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

## SECOND CLAIM FOR RELIEF

## (TRADEMARK INFRINGEMENT, FALSE DESIGNATION OF ORIGIN, PASSING OFF, AND UNFAIR COMPETITION UNDER SECTION 43(a) OF THE LANHAM ACT, 15 U.S.C. § 1125(a))

46.    Firestone repeats and realleges each and every allegation set forth in paragraphs 1 through 45 of this Complaint.

47.    The Defendants' use of the FIRESTONE name and mark, as described above, has caused actual confusion and is likely to continue to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of the Defendants, their services/products, and/or their commercial activities by or with Firestone, and thus constitute trademark infringement, false designation of origin, passing off, and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

## THIRD CLAIM FOR RELIEF

## (TRADEMARK DILUTION UNDER SECTION 43(a) OF THE LANHAM ACT, 15 U.S.C. § 1125(c))

48.    Firestone repeats and realleges each and every allegation set forth in paragraphs 1 through 47 of this Complaint.

49.    Firestone's FIRESTONE marks are famous, as that term is used in 15 U.S.C. § 1125(c), and were famous prior to the Defendants' first use of FIRESTONE and/or FIRESTONE PHILADELPHIA MOTOR WORLD, based on, among other things, the federal registrations of Firestone's FIRESTONE marks, the long and extensive nationwide use, advertising, promotion, and recognition of Firestone's FIRESTONE marks, and the findings of the Trademark Trial and Appeal Board in *Bridgestone/Firestone North American Tire, LLC and BFS Brands, LLC v. Silverstone Berhad*, 2003 TTAB LEXIS 142, 28-29 (TTAB 2003).

13

50.     The Defendants' actions, as described above, are likely to dilute and/or are

diluting the distinctive quality of Firestone's famous FIRESTONE marks in violation of Section

43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

## FOURTH CLAIM FOR RELIEF

### (TRADEMARK DILUTION UNDER PENNSYLVANIA'S DILUTION STATUTE, 54 Pa. Cons. Stat. Ann. § 1124)

51.     Firestone repeats and realleges each and every allegation set forth in paragraphs 1

through 50 of this Complaint.

52.     Based on the distinctiveness and long, extensive, and exclusive use of the

FIRESTONE name and marks among the general consuming public, Firestone's FIRESTONE

name and marks are famous, and were famous prior to Defendants' use of FIRESTONE and/or

FIRESTONE PHILADELPHIA MOTOR WORLD.

53.     The Defendants' actions, as described above, are likely to dilute and/or are

diluting Firestone's famous FIRESTONE name and marks in violation of Pennsylvania's

Dilution Statute, 54 Pa. Cons. Stat. Ann. § 1124.

54.     The Defendants' actions, as described above, have also been undertaken with

willful intent to trade on Firestone's reputation and to cause dilution of its famous FIRESTONE

name and marks.

## FIFTH CLAIM FOR RELIEF

### (UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION UNDER PENNSYLVANIA LAW, 73 P.S. §§ 201-1 to 201-9.3)

55.     Firestone repeats and realleges each and every allegation set forth in paragraphs 1

through 54 of this Complaint.

56.     In connection with their business and the unauthorized sale and distribution of

services and products under the FIRESTONE and/or FIRESTONE PHILADELPHIA MOTOR

14

WORLD name and marks, the Defendants have engaged in deceptive trade practices, including but not limited to: causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, status, or affiliation of goods or services; and causing likelihood of confusion or of misunderstanding as to affiliation, connection, or association with another, in violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1 to 201-9.3.

**SIXTH CLAIM FOR RELIEF**

**(TRADEMARK INFRINGEMENT UNDER PENNSYLVANIA COMMON LAW)**

57.     Firestone repeats and realleges each and every allegation set forth in paragraphs 1 through 56 of this Complaint.

58.     Firestone's FIRESTONE name and mark has become recognized by the general public as identifying the goods, services, and goodwill of Firestone and its affiliates.

59.     The Defendants' actions, as described above, are likely to create confusion among consumers in violation of Pennsylvania common law.

**PRAYER FOR RELIEF**

WHEREFORE, Firestone requests that this Court enter judgment in its favor on each and every claim for relief set forth above and award it relief including, but not limited to, the following:

A.  An Order declaring that the Defendants' use of the FIRESTONE and/or FIRESTONE PHILADELPHIA MOTOR WORLD name and marks infringes on Firestone's rights in its FIRESTONE name and marks, and constitutes dilution of the FIRESTONE name and marks, and unfair competition under federal and/or state law.

B.  A temporary restraining order, preliminary injunction, and permanent injunction enjoining Defendants and their employees, agents, partners, officers, directors, owners, shareholders, principals, subsidiaries, related companies, affiliates, distributors, dealers, and all persons in active concert or participation with any of them:

1.  From using or registering the FIRESTONE and/or FIRESTONE PHILADELPHIA MOTOR WORLD name and mark and/or any other marks or names that are likely to cause confusion with and/or dilute the FIRESTONE marks—as or as part of a trademark, trade name, corporate name, business name, e-mail address, domain name, URL, metatag, keyword, or other name, mark, or identifier;

2.  From representing by any means whatsoever, directly or indirectly, that Defendants are associated or connected in any way with Firestone or sponsored or authorized by or affiliated with Firestone;

C.  An Order directing Defendants to, within thirty days after the entry of the temporary restraining order, preliminary injunction, and/or permanent injunction, file with this Court and serve on Firestone's attorneys a report in writing and under oath setting forth in detail the manner and form in which Defendants have complied with the temporary restraining order, preliminary injunction, and/or permanent injunction;

D.  An Order directing Defendants to immediately remove, at Defendants' sole cost, signage bearing the FIRESTONE name and mark and/or any other marks or names that are likely to cause confusion with and/or dilute the FIRESTONE name and marks;

E.  An Order directing Defendants to immediately destroy all products, advertisements, promotional materials, stationery, forms, and/or any other materials and things that contain or

bear the FIRESTONE mark and name and/or any other marks or names that are likely to cause confusion with and/or dilute the FIRESTONE name and marks;

F.   An Order requiring Defendants to account for and pay to Firestone any and all profits arising from the foregoing acts, and increasing such profits, including trebling them, in accordance with 15 U.S.C. § 1117 and other applicable laws;

G.   An Order requiring Defendants to pay Firestone damages in an amount as yet undetermined caused by the foregoing acts, and trebling such damages in accordance with 15 U.S.C. § 1117 and other applicable laws;

H.   An Order requiring Defendants to pay Firestone damages in an amount as yet undetermined caused by the foregoing acts, in accordance with state statutory and common law;

I.   An Order requiring Defendants to pay Firestone its costs and attorneys' fees in this action pursuant to 15 U.S.C. § 1117 and other applicable laws;

J.   An Order requiring Defendants to pay prejudgment and post-judgment interest as recoverable under statute and common law on all sums; and

K.   Other relief as the Court may deem appropriate.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38, Firestone respectfully demands a trial by jury on all issues properly triable by a jury in this action.

WARD GREENBERG HELLER & REIDY LLP

Date:  11/16/2018          By:_____

Benjamin D. Hartwell (BDH 8981)
1835 Market Street, Suite 650
Philadelphia, Pennsylvania 19103
Telephone: (215) 836-1887
Fax: (215) 836-2845
bhartwell@wardgreenberg.com

and

HOLLAND & HART LLP
Hope Hamilton (*pro hac vice application forthcoming*)
P.O. Box 8749
Denver, Colorado 80201
hihamilton@hollandhart.com
docketing@hollandhart.com
Telephone: (303) 473-4822
Fax: (303) 416-8842

*Attorneys for Plaintiffs*
**Bridgestone Brands, LLC and Bridgestone Americas
Tire Operations, LLC**

11624928_2